**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

WELLS FARGO BANK, N.A., successor to )
WELLS FARGO BANK MINNESOTA, N.A. )
successor to NORWEST BANK MINNESOTA )
N.A. as Trustee for Certificate )
Holders of SACO1 Series 1999-2 )
                           Plaintiff, )
       vs. )     No.
ROZINA WILKS )     FILED: JULY 9, 2008
                                          )     08CV3910
                                          )     JUDGE NORDBERG
                                          )     MAGISTRATE JUDGE ASHMAN
                                          )
                                          )     PH
                                          )
                         Defendants.)

## COMPLAINT TO FORECLOSE MORTGAGE

Plaintiff, by KROPIK, PAPUGA and SHAW, its attorneys, says:

1.  Jurisdiction of this Court is based upon diversity of citizenship.  Plaintiff, WELLS FARGO BANK. N.A., successor to WELLS FARGO BANK MINNESOTA, N.A., successor to NORWEST BANK MINNESOTA N.A. as Trustee for Certificate Holders of SACO1 Series 1999-2 is organized and existing under the laws of the United States of America , with it main office being located in the State of South Dakota. Defendant, ROZINA WILKS is a citizen of the State of Illinois. The matter in controversy, exclusive of interest and costs, exceeds the sum of $75,000.00.

2.  On December 21, 1995, Rozina Wilks  executed and delivered a note, promising to pay to Secretary of Housing and Urban Development the principal sum of $85,086.00 with interest, and to secure the payment of said note, executed, acknowledged and delivered a mortgage of even date, which was filed for record in the Recorder's Office of Cook County, Illinois, on December 21, 1995 as Document Number 95889541 thereby conveying the property described in Exhibit "A", which is attached hereto and made a part hereof.

4. Said Note and Mortgage have been assigned to Plaintiff, WELLS FARGO BANK. N.A., successor to WELLS FARGO BANK MINNESOTA, N.A., successor to NORWEST BANK MINNESOTA N.A. as Trustee for Certificate Holders of SACO1 Series 1999-2, and Plaintiff is the legal owner and holder of the note and mortgage, copies of which note, and mortgage are attached hereto as Exhibits "1" and "2" and made a part hereof and incorporated herein by reference.Copies of the assignments of mortgage are attached hereto as Exhibits "3" and "4".

19. Default has been made in the payment of the installments due under the terms of said note for more than three months, by reason whereof, the principal and interest was declared to be immediately due and payable. The unpaid principal balance is $ 85,086.00 with interest accruing from JULY 1, 2004 at the rate of 17.48 per day or otherwise as set forth in said note.

20. Sums expended for attorney's fees, taxes, fire insurance premiums and costs of this proceeding, shall be so much additional indebtedness secured by said mortgage.

21. The mortgaged property is depreciating in value and is scant and inadequate security for the debt due herein. Plaintiff is paying the real estate taxes on said property. For such reasons a receiver should be appointed immediately.

22. The following persons have, or claim to have, some right, title and interest in the above-described property, and are therefore made parties defendant to this proceeding, but their right, title and interest, if any, is subject and subordinate to the lien of Plaintiff herein:

(a) ROZINA WILKS as record title owner of the above described property.

- 2 -

WHEREFORE, Plaintiff prays (a) That the Court find that Plaintiff has a valid and enforceable first mortgage lien on the real estate that is the subject of this proceeding; (b) that an account be taken of the amounts due and owing, including attorney's fees and other costs and disbursements made in connection with this proceeding; (c) that in default of payment of amounts due, the mortgaged property may be ordered sold to satisfy said indebtedness; (d) that in case of failure to redeem pursuant to statute, the defendants, and each of them, and all parties claiming through or under them, may be forever barred and foreclosed of and from all right or equity of redemption and claims to said property; (e) that in case the proceeds of such sale be not sufficient to pay in full the amounts found due, a deficiency Judgment may be entered against such defendant or defendants as may be found personally liable to pay the same, and who have not been discharged in bankruptcy and that execution be issued thereon; (f) that a Receiver be appointed with the usual powers of Receivers in like cases, or that the Plaintiff, as mortgagee, be placed in possession of the above-described property; (g) that Plaintiff may have such other relief as may be equitable.

_____
Attorney for Plaintiff

KENNETH K. SHAW, JR.
STANLEY W. PAPUGA
KROPIK, PAPUGA & SHAW
Attorneys for Plaintiff
120 South LaSalle Street
Chicago, Illinois 60603
Telephone: 312/236-6405

Re: WILKS

## LEGAL DESCRIPTION

. LOT 188 IN J.E. MERRION'S MARYNOOK ADDITION, A
. RESUBDIVISION OF PART OF THE WEST 1/2 OF THE SOUTHEAST 1/4
. AND PART OF THE EAST 1/2 OF THE SOUTHWEST 1/4 OF SECTION 35,
. TOWNSHIP 38 NORTH, RANGE 14, EAST OF THE THIRD PRINCIPAL
. MERIDIAN, IN COOK COUNTY, ILLINOIS.

SAID PROPERTY IS COMMONLY KNOWN AS: 1269 EAST 85TH STREET
                                    CHICAGO, IL 60619

PERMANENT TAX NO.: 20-35-423-014

EXHIBIT 'A'

Re: WILKS

## NOTICE TO CONSUMER PURSUANT TO
## FEDERAL FAIR DEBT COLLECTION PRACTICES ACT

1.  Amount of debt. As of the date of the preparation of the attached complaint, June 25, 2008 , the amount due on the note and mortgage is $142,676.35 plus reasonable attorney's fees and costs.Because of interest, late charges, and other charges that may vary from day to day, the amount due on the day you pay may be greater. Hence, if you pay the amount shown above, an adjustment may be necessary after we receive your check, in which event we will inform you before depositing the check for collection. For further information, write or call the law firm of Kropik Papuga & Shaw at the address or telephone number contained in the attached Complaint.

2.  The name of the creditor is the named Plaintiff in the attached complaint.

3.  Unless you notify us within 30 days after receipt of this Notice that you dispute the validity of the debt set forth in the attached complaint, or any portion thereof, we will assume that the debt is valid. If you notify us in writing within said 30 day period that the debt or any portion thereof is disputed, we will obtain verification of the debt and a copy of such verification will be mailed to you.

4.  Upon your written request within 30 days after receipt of this notice, we will provide you with the name and address of the original creditor if it is different from the Plaintiff named in the attached complaint.

5.  This is an attempt to collect a debt and any information obtained will be used for that purpose.

6.  Nothing in this notice is to be construed as an agreement by the Plaintiff to extend or stay any time periods established by law with respect to the litigation which is the subject of the attached complaint.

08CV3910

JUDGE NORDBERG

MAGISTRATE JUDGE ASHMAN

PH

State of Illinois

**NOTE**

December 21, 1995

1269 East 85th Street, Chicago, Illinois  60619

### 1.  PARTIES

Rozina Wilks

"Borrower" means each person signing at the end of this Note, and the person's successors and assigns.   "Lender" means the Secretary of Housing and Urban Development,. and its successors and assigns.

### 2.  BORROWER'S PROMISE TO PAY INTEREST

In return for a loan received from Lender, Borrower promises to pay the principal sum of Eighty Five Thousand Eighty Six and 00/100 Dollars ($85086.00) .       plus interest to the order of Lender.  Interest will be charged on unpaid principal, from the date of disbursement of the loan proceeds by Lender, at the rate of Seven and 50/100 per cent (7.5%) per year until the full amount of principal has been paid.

### 3.  PROMISE TO PAY SECURED

Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument."  This Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

### 4.  MANNER OF PAYMENT

(A)  Time

Borrower shall make a payment of principal and interest to Lender on the first day of each month beginning on February 1, 1996.

IMAGED

**EXHIBIT**

1

Any principal and interest remaining on the first day of 2000 will be due on that date, which is called the maturity date.

    (B)  Place

       Payment shall be made to HUD Secretary of Housing and Urban Development, 77 West Jackson Boulevard, Chicago, Illinois 60604-3507, or at such place as Lender may designate in writing by notice to Borrower.  All payments shall be marked with the HUD Case No.:

    (C)  Amount

       Each monthly payment of principal and interest will be in the amount of Five Hundred Ninety Five and 60/100 Dollars ($595.60).  This amount will be part of a larger monthly payment required by the Security Instrument, that shall be applied to principal, interest and other items in the order described in the Security Instrument.

5.  BORROWER'S RIGHT TO REPAY

   Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day of any month.

6.  BORROWER'S FAILURE TO PAY

   (A)  Late Charge for Overdue Payments

       If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of fifteen calendar days after the payment is due, Lender may collect a late charge in the amount of four percent (4%) of the overdue amount of each payment.

       (B)  If Borrower defaults by failing to pay in full any monthly payment, then Lender may, in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest.  Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default.

   (C)  Payment of Costs and Expenses

       If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorney's fees for enforcing this Note.  Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

## 7. WAIVERS

Borrower and other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

ROZINA WILKS

BY: _Rozina Wilks_
Authorized Representative

Subscribed and Sworn To
Before Me This _21_ Day
of _December_, 1995.

_____
NOTARY PUBLIC

```
"OFFICIAL SEAL"
LARRY W. HUTSON
Notary Public, State of Illinois
My Commission Expires 2/18/98
```

29

ALLONGE

## DEED OF TRUST/MORTGAGE NOTE ENDORSEMENT

| | |
|---|---|
| Former FHA Case No. | 0000001314433039 |
| Lender No. | 000000000504888 |
| EMC No. | 1682509 |
| Street Address | 1269 EAST 85TH STREET |
| City, State | CHICAGO                    IL |

### ENDORSEMENT OF MORTGAGE NOTE, DEED OF TRUST NOTE OR OTHER INSTRUMENT NOTE

### FROM: SECRETARY OF HOUSING AND URBAN DEVELOPMENT ("HUD")

Pay to the order of                           EMC MORTGAGE CORPORATION
("Assignee"), without recourse.

   HUD and the Assignee expressly acknowledge and agree that from and after the date of this Endorsement, no FHA mortgage insurance is in effect with respect to the Note and that the panel evidencing FHA Mortgage Insurance on the Note shall be deemed to be marked with an "X" across it and the Mortgage Note (including any assignments thereto and modifications thereof) to be marked with the words "FHA Insurance Terminated. Mortgage Note Endorsement From HUD Hereby Made A Part Hereof."

   ANY CHANGES IN THE PAYMENT OBLIGATIONS UNDER THE NOTE BY VIRTUE OF ANY FORBEARANCE OR ASSISTANCE AGREEMENT, PAYMENT PLAN OR MODIFICATION AGREEMENT AGREED TO BY HUD, WHETHER OR NOT IN WRITING, WILL BE BINDING UPON ASSIGNEE, ITS SUCCESSORS AND ASSIGNS. THIS PARAGRAPH SHALL BE INCLUDED IN ALL FUTURE ENDORSEMENTS OR ASSIGNMENTS OF THE NOTE.

   THE NOTE AND THE MORTGAGE SECURING THE NOTE MAY ONLY BE TRANSFERRED AND ASSIGNED TO A PERSON OR ENTITY THAT IS EITHER AN FHA-APPROVED SERVICING MORTGAGEE OR WHO HAS ENTERED INTO A CONTRACT FOR THE SERVICING OF THE NOTE WITH AN FHA-APPROVED SERVICING MORTGAGEE. THE NOTE AND THE MORTGAGE SECURING THE NOTE SHALL BE SERVICED IN ACCORDANCE WITH THE ABRIDGED VERSION OF CHAPTERS 5,6,7 AND 9 AND APPROPRIATE APPENDICES OF HUD HANDBOOK 4330.2 REV-1, "MORTGAGE ASSIGNMENT AND PROCESSING SECRETARY-HELD SERVICING." THESE SALES AND SERVICING PROVISIONS SHALL CONTINUE TO APPLY UNLESS THE MORTGAGE IS MODIFIED, FOR CONSIDERATION, WITH THE CONSENT OF THE MORTGAGOR, REFINANCED, OR SATISFIED OF RECORD. THIS PARAGRAPH SHALL BE INCLUDED IN ALL FUTURE ENDORSEMENTS OR ASSIGNMENTS OF THE NOTE.

   IN WITNESS WHEREOF,   HUD has caused this Endorsement to be executed and delivered by its duly authorized agent as of the 26th day of September, 1997.

SECRETARY OF HOUSING AND URBAN DEVELOPMENT

BY:      _Sue Stepanek_

Sue Stepanek, its Attorney-In-Fact

Loan Number: 1682509

# *ALLONGE*

This Allonge is attached to and made part of that certain Promissory note:

*Dated:* December 21, 1995

*Executed by:*

*Original amount: $*          85,086.00

It is to be read together with, and is hereby incorporated by reference in, the attached instrument, and constitutes an integral part thereof.

PAY TO THE ORDER OF

WITHOUT RECOURSE

## EMC MORTGAGE CORPORATION

BY: _____

Name: Ralene Ruyle
Title: Executive Vice President

JUDGE NORDBERG
MAGISTRATE JUDGE ASHMAN

PH

95889541



DEPT-01 RECORDING                    $33.50
T#5555   TRAN 3881 12/21/95 14:35:00
#9558 ‡ DR *-95-889541
COOK COUNTY RECORDER

STATE OF ILLINOIS

MORTGAGE

THIS MORTGAGE ("Security Instrument") is given on December 21, 1995.  The Mortgagor is Rozina Wilks                        whose address is 1269 East 85th Street  Chicago, IL 60619 ("Borrower"). This Security Instrument is given to the Secretary of Housing and Urban Development whose address is Chicago Regional Office, Region V, 77 W. Jackson Blvd., Chicago, Illinois  60604-3507 ("Lender"). Borrower owes Lender the principal sum of Eighty Five Thousand Eighty Six and 00/100 Dollars ($85086.00)      This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on January 1, 2026.

This Security Instrument secures to Lender:   (a)   the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications; (b) the payment of all other sums, with interest, advanced under paragraph 6 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note.  For this purpose, Borrower does hereby mortgage, grant and convey to the Lender, the following described property located in Cook County:

Lot 188 in J.E. Merrion's Marynook Addition, a Resubdivision of part of the West ½ of the Southeast ¼ and part of the East ½ of the Southwest ¼ of Section 35, Township 38 North, Range 14, East of the Third Principal Meridian, in Cook County, Illinois.

which has the address of   1269 East 85th Street, Chicago, IL 60619 ("Property Address");   PIN# 20-35-423-014

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances, rents, royalties, mineral, oil and gas rights and profits, water rights and stock and all fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument.  All of the foregoing is referred to in this Security Instrument as the "Property."

EXHIBIT

2

Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances or record.

UNIFORM COVENANTS.

1.  Payment of Principal, Interest and Late Charge. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

2.  Monthly Payments of Taxes, Insurance and Other Charges. Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, an installment of any (a) taxes and special assessments levied or to be levied against the Property and (b) leasehold payments or ground rents on the Property.

Each monthly installment for items (a) and (b) shall equal one-twelfth of the annual amounts, as reasonably estimated by Lender, plus an amount sufficient to maintain an additional balance of not more than one-sixth of the estimated amounts. The full Annual amount for each item shall be accumulated by the Lender within a period ending one month before an item would become delinquent. Lender shall hold the amounts collected in trust-to-pay items (a) and (b) before they become delinquent.

If at any time the total of the payments held by Lender for items (a) and (b), together with the future monthly payments for such items payable to Lender prior to the due dates of such items, exceeds by more than one-sixth the estimated amount of payments required to pay such items when due, and if payments on the Note are current, then Lender shall either refund the excess over one-sixth of the estimated payments or credit the excess over one-sixth of the estimated payments to subsequent payments by Borrower, at the option of Borrower. If the total of the payments made by Borrower for item (a) and (b) is insufficient to pay the item when due, then Borrower shall pay to Lender any amount necessary to make up the deficiency on or before the date the item becomes due.

As used in this Security Instrument, "Secretary" and "Lender" mean the Secretary of Housing and Urban Development or his or her designee.

If Borrower tenders to Lender the full payment of all sums secured by this Security Instrument, Borrower's account shall be credited with the balance remaining for all installments for items (a) and (b) and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a) and (b).

3. **Application of Payments.** All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

First, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Second, to interest due under the Note;

Third, to amortization of the principal of the Note;

Fourth, to late charges due under the Note.

4. **Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in Paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in Paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

5. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be

in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

6.  Charges to Borrower and Protection of Lender's Rights in the Property.  Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in Paragraph 2.  Borrower shall pay these obligations on time directly to the entity which is owed the payment.  If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by Paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in Paragraph 2.

Any amounts disbursed by Lender under this Paragraph shall become an additional debt of Borrower and be secured by this Security Instrument.  These amounts shall bear interest from the date of disbursement at the Note rate, and at the option of Lender shall be immediately due and payable.

7.  Condemnation.  The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument.  Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in Paragraph 3, and then to prepayment of principal.  Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in Paragraph 2, or change the amount of such payments.  Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note shall be paid to the entity legally entitled thereto.

8.  Fees.  Lender may collect reasonable fees and charges.

9.    Grounds for Acceleration of Debt.

    (a)    Default.    Lender may require immediate payment in full of all sums secured by this Security Instrument if:

        (i)    Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

        (ii)  Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

    (b)    Sale Without Credit Approval.    Lender shall, if permitted by applicable law require immediate payment in full of all sums secured by this Security Instrument if:

        (i)    All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent) by the Borrower, and

        (ii)  The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property, but his or her credit has not been approved in accordance with the requirements of the Secretary.

    (c)    No Waiver.    If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its right with respect to subsequent events.

   10.    Reinstatement.    Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument.    This right applies even after foreclosure proceedings are instituted.    To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorney's fees and expenses properly associated with the foreclosure proceeding.    Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full.    However, Lender is not required to permit reinstatement if:   (i)   Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on

different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

11.  Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest.  Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest.  Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

12.  Successors and Assigns Bound; Joint and Several Liability; Co-Signers.  The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the term of this Security Instrument or the Note without that Borrower's consent.

13.  Notices.  Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method.  The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower.  Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

14.  Governing Law; Severability.  This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which Property is located.  In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.  To this end the provisions of this Security Instrument and the Note are declared to be severable.

15.  Borrower's Copy.  Borrower shall be given one conformed copy of this Security Instrument.

16. **Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 16.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

17. **Foreclosure Procedure.** Lender may invoke any remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 17, including but not limited to, reasonable attorney's fees, title evidence, sheriff's fees, and other costs of sale.

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

ROZINA WILKS

BY: _Rozina Wilks_

Subscribed and Sworn to before me
this 21 day of December, 1995.

_____
Notary Public

"OFFICIAL SEAL"
LARRY W. HUTSON
Notary Public, State of Illinois
My Commission Expires 2/18/98

98531284

8228/0035 37 001 Page 1 of    4
1998-06-23  10:05:57
Cook County Recorder      51.50

Prepared By
Recording requested by and
When recorded, return to:
RCG, Inc.
505 San Marin Drive, #110A
Novato, CA 94945

08CV3910

JUDGE NORDBERG

MAGISTRATE JUDGE ASHMAN

**ASSIGNMENT OF MORTGAGE**
**AND**
**OTHER COLLATERAL LOAN DOCUMENTS**

PH

Loan No./Deal ID:    : **1682509/HUD5/HUD5**
Former FHA Project No.: **000001314433039**
City, State    : **Chicago, IL**

The Secretary of Housing and Urban Development solely in its capacity as mortgagee ("HUD"), pursuant to the terms of that certain Loan Sale Agreement between HUD ("Assignor") whose address is 451 Seventh Street, S.W., Washington, D.C., 20410 and RCG Mortgage Corporation ("Assignee") whose address is 222 W. Las Colinas Blvd., Suite 600, Irving, TX 75039 as of September 9, 1997 (the "Loan Sale Agreement"), and in consideration of Ten Dollars ($10.00) and other good and valuable consideration paid by Assignee, hereby assigns, transfers, sets over and conveys, to Assignee, its successors and assigns, the following without recourse:

1.    That certain Mortgage dated **12/21/95** in the original amount of $85086.00 made by Rozina Wilks which certain Mortgage was recorded as follows:
       Book/Volume/Reel/Liber No.                                    :
       Page Number                                                         :
       Instrument/Document No.                                        : **95889541**
       Certificate No./Other Reference No.                         :
       Tax/Map/Parcel Reference # (if required for recording): **20-35-423-014**
       Township/Borough (if required)                              :
       Original Lender: **Secretary of Housing and Urban Development**
       Property Address: **1269 East 85th Street, Chicago 60619**

further described by legal description, hereby attached and incorporated by reference as
**Exhibit 'A'**
which was recorded on 12/21/95 in **Cook** County/Town, IL ("Mortgage"), which Mortgage
secures  that certain **Note** dated **12/21/95** ("Note"); and

IMAGED

IMAGED

Sn
P 7
n
my
51.50



**EXHIBIT**

**3**

Page 2-Assignment for Loan # 1682509

2.  Such other documents, agreements, instruments and other collateral which evidence, secure or otherwise relate to HUD's right, title or interest in and to the Mortgage and/or the Note and the title insurance policies and hazard insurance policies that may presently be in effect.

The Note was endorsed by HUD to Assignee without "FHA Mortgage Insurance" (as such term is defined in the Loan Sale Agreement) and without recourse.

**ANY CHANGE IN THE PAYMENT OBLIGATIONS UNDER THE NOTE BY VIRTUE OF ANY FORBEARANCE AGREEMENT, ASSISTANCE AGREEMENT OR MODIFICATION AGREED TO BY HUD, WHETHER OR NOT IN WRITING, WILL BE BINDING UPON ASSIGNEE, ITS SUCCESSORS AND ASSIGNS. THIS PARAGRAPH SHALL BE INCLUDED IN ALL FUTURE ENDORSEMENTS OR ASSIGNMENTS OF THE MORTGAGE.**

**THE MORTGAGE MAY ONLY BE TRANSFERRED AND ASSIGNED TO A PERSON OR ENTITY THAT IS EITHER AN FHA-APPROVED MORTGAGEE OR THAT HAS ENTERED INTO A CONTRACT FOR THE SERVICING OF THE NOTE WITH AN FHA-APPROVED MORTGAGEE. THE MORTGAGE SHALL BE SERVICED IN ACCORDANCE WITH THE SERVICING REQUIREMENTS SET FORTH AS EXHIBIT L TO THE LOAN SALE AGREEMENT. THIS PARAGRAPH SHALL BE INCLUDED IN ALL FUTURE ENDORSEMENTS OR ASSIGNMENTS OF THE MORTGAGE.**

Page 3-Assignment for Loan # 1682509

IN WITNESS WHEREOF, HUD has caused this Assignment to be executed and delivered by its duly authorized agent effective as of the 26th day of September, 1997.

SECRETARY OF HOUSING AND URBAN DEVELOPMENT

By: _Sue Stepanek_

Name: Sue Stepanek, as Attorney-in-Fact pursuant to a Power of Attorney effective as of September 26, 1997.

State of Texas
County of Dallas

On _01/22_, 1998, before me, Mary Sue Moerbe, Notary Public, personally appeared Sue Stepanek personally known to me (or proven on the basis of satisfactory evidence) to be the person whose name is subscribed to the within instrument who acknowledged that he/she is the authorized attorney-in-fact for the Secretary of the Department of Housing and Urban Development and acknowledged to me that he/she executed the same in his/her authorized capacity and that by his/her signature on the instrument, the person or the entity on behalf of which the person acted, executed the instrument.

Witness my hand and official seal this _22_ day of _January_, 1998.

_Mary Sue Moerbe_

Notary Public: Mary Sue Moerbe

My Commission expires: 06/24/2000

> MARY SUE MOERBE
> Notary Public, State of Texas
> My Commission Expires 06-24-00

Prepared by: S. Richardson _____

RCG, Inc. 505 San Marin Dr., #110A, Novato, CA 94945 415-898-7200(ct,in,il,oh,ok,mi,nj-Y/NJ/Y/NJ/)

## EXHIBIT "A"

1682509

Lot 188 in J.E. Merrion's Marynook Addition, a Resubdivision of part of the West ½ of the Southeast ¼ and part of the East ½ of the Southwest ¼ of Section 35, Township 38 North, Range 14, East of the Third Principal Meridian, in Cook County, Illinois.

09095201

9171/0043 30 001 Page 1 of   4
**1999-11-22 11:44:57**
Cook County Recorder        27.00

Prepared By

Record and Return To:
EMC MORTGAGE CORPORATION
MacArthur Ridge II
909 Hidden Ridge Drive, Suite 200
Irving, Texas 75038

*Box 178*

SACO
*PB 99-5735*

08CV3910

JUDGE NORDBERG

MAGISTRATE JUDGE ASHMAN

PH

## ASSIGNMENT OF MORTGAGE
## AND
## OTHER COLLATERAL LOAN DOCUMENTS

Loan No./Deal ID:     : 1682509/**HUD5/HUD5**
Former FHA Project No.: 000001314433039

**EMC Mortgage Corporation** ("Assignor") whose address is 222 W. Las Colinas Blvd., Suite 600, Irving, Texas 75039, and **Norwest Bank Minnesota, NA as Trustee for Certificate Holders of SACO I, Inc., Series 1999-2** ("Assignee") whose address is 11000 Broken Land Parkway, Columbia, Maryland 21044, and in consideration of Ten Dollars ($10.00) and other good and valuable consideration paid by Assignee, hereby assigns, transfers, sets over and conveys, to Assignee, its successors and assigns, the following without recourse:

1.    That certain Mortgage dated **12/21/95** in the original amount of $85086.00 made by Rozina Wilks   which certain Mortgage was recorded as follows:
      Book/Volume/Reel/Liber No.                :
      Page Number                                :
      Instrument/Document No.                    : **95889541**
      Certificate No./Other Reference No.        :
      Tax/Map/Parcel Reference # (if required for recording):  20-35-423-014
      Township/Borough (if required)
      Original Lender: **Secretary of Housing and Urban Development**
      Property Address:  **1269 East 85th Street, Chicago 60619**

**further described by legal description, hereby attached and incorporated by reference as Exhibit 'A'**
which was recorded on **12/21/95** in Cook County/Town, **IL** ("Mortgage"), which Mortgage secures  that certain **Note** dated **12/21/95** ("Note"); and



EXHIBIT
4

**09095201**

Page 2

2.      Such other documents, agreements, instruments and other collateral which evidence, secure or otherwise relate to HUD's right, title or interest in and to the Mortgage and/or the Note and the title insurance policies and hazard insurance policies that may presently be in effect.

   The Note was endorsed by HUD to Assignee without "FHA Mortgage Insurance" (as such term is defined in the Loan Sale Agreement) and without recourse.

   **ANY CHANGE IN THE PAYMENT OBLIGATIONS UNDER THE NOTE BY VIRTUE OF ANY FORBEARANCE AGREEMENT, ASSISTANCE AGREEMENT OR MODIFICATION AGREED TO BY HUD, WHETHER OR NOT IN WRITING, WILL BE BINDING UPON ASSIGNEE, ITS SUCCESSORS AND ASSIGNS. THIS PARAGRAPH SHALL BE INCLUDED IN ALL FUTURE ENDORSEMENTS OR ASSIGNMENTS OF THE MORTGAGE.**

   **THE MORTGAGE MAY ONLY BE TRANSFERRED AND ASSIGNED TO A PERSON OR ENTITY THAT IS EITHER AN FHA-APPROVED MORTGAGEE OR THAT HAS ENTERED INTO A CONTRACT FOR THE SERVICING OF THE NOTE WITH AN FHA-APPROVED MORTGAGEE. THE MORTGAGE SHALL BE SERVICED IN ACCORDANCE WITH THE SERVICING REQUIREMENTS SET FORTH AS EXHIBIT L TO THE LOAN SALE AGREEMENT. THIS PARAGRAPH SHALL BE INCLUDED IN ALL FUTURE ENDORSEMENTS OR ASSIGNMENTS OF THE MORTGAGE.**

3.      All other existing legal or equitable rights, interests and remedies in or with respect to the Mortgage and/or the Note and/or the proceeds thereof, including, but not limited to, escrow deposits, existing title insurance policies and hazard insurance policies, as well as causes of action and judgements related thereto.

   Together with the note or bond secured thereby, the note or bond evidencing said indebtedness having this day been transferred together with Assignor's right, title and interest in and to said Mortgage, all without recourse, or warranty, the property herein described and the indebtedness thereby secured.

Page 3-Assignment for Loan # **1682509**

*EMC -TP*

   IN WITNESS WHEREOF, HUD has caused this Assignment to be executed and delivered by its duly authorized agent effective as of the 15th day of February, 1999.

*officer*

**09095201**

EMC Mortgage Corporation

By: _____

Name:  Terry Purchal

Title:  Vice President

State of Texas
County of Dallas

   On February 17, 1999, before me, Maribel Galvan, Notary Public, personally appeared Terry Purchal, personally known to me (or proven on the basis of satisfactory evidence) to be the person whose name is subscribed to the within instrument who acknowledged that he/she is the authorized Vice President of EMC Mortgage Corporation, and acknowledged to me that he/she executed the same in his/her authorized capacity and that by his/her signature on the instrument, the person or the entity on behalf of which the person acted, executed the instrument.

   Witness my hand and official seal this 17 day of February, 1999.

Notary Public:  Maribel Galvan
My Commission expires:  06/20/2000

> MARIBEL GALVAN
> MY COMMISSION EXPIRES
> June 20, 2000

Prepared By: RCG, Inc., 505 A San Marin Dr., Novato, CA 94945, (415)898-7200; S. Richardson _____.

11/19/99    11:01:10    Legal Description    FC013M1
Name:  **WILKS, ROZINA**

| Line | |
|------|---|
| 1.00 | LOT 188 IN J.E. MERRION'S MARYNOOK ADDITION, A RESUBDIVISION |
| 2.00 | OF PART OF THE WEST 1/2 OF THE SOUTHEAST 1/4 AND PART OF THE |
| 3.00 | EAST 1/2 OF THE SOUTHWEST 1/4 OF SECTION 35, TOWNSHIP 38 |
| 4.00 | NORTH, RANGE 14, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN |
| 5.00 | COOK COUNTY, ILLINOIS. |
| 6.00 | |
| 7.00 | 20-35-423-014 |
| 8.00 | 09095201 |
| 9.00 | |
| 10.00 | |
| 11.00 | |
| 12.00 | |
| 13.00 | |
| 14.00 | |
| 15.00 | |
| 16.00 | |
| 17.00 | |
| 18.00 | |
| 19.00 | |

C7/Exit-Update   C9/Assign paragraph   C11/Insert Line C12/Condense C22/No Update

09095201

# BOX 178